### MISSOURI, KANSAS & OKLAHOMA COACH LINES, Inc., v. STATE et al.

Nos. 27794 and 27795, Consolidated.

June 7, 1938.

Rehearing Denied July 26, 1938.

George F. Short, Welcome D. Pierson, and Max G. Morgan, for appellant.

J. K. Wright, Mac Q. Williamson, Atty. Gen., and J. B. A. Robertson, for appellees.

RILEY, J. This is an appeal by the Missouri, Kansas & Oklahoma Coach Lines, Inc., from certain orders of the Corporation Commission of the state of Oklahoma, whereby appellant's application for a permit to operate an intrastate motor carrier over a certain route was denied, and the application of the appellee Fred O. Turner for a permit to operate over the same route was granted.

The appellant and appellee will hereinafter be referred to as M., K. & O. and Turner, respectively.

On April 18, 1936, M., K. & O. filed its application with the Corporation Commission for a permit to operate a class "A" motor carrier, intrastate passenger and express service, between a point twelve miles north of Stillwater, known as Bill's Corner, and Ponca City, Okla. M., K. & O. did not send the required filing fee until April 23, 1936, and the case was placed on the docket April 24th.

On April 23, 1936, Turner's application, accompanied by the requisite fee, was received and docketed.

Notice of M., K. & O.'s intention to apply for the permit was published in both the Ponca City Daily News and the Stillwater Gazette on April 9, 1936. Notice of Turner's intention was first published on April 27, 1936, in the Ponca City Daily News, and on May 1, 1936, in the Stillwater Gazette.

M., K. & O. was shown to be a corporation operating a rather extensive system of bus lines in Northeastern and Northern Oklahoma with an interstate service from Tulsa to East St. Louis, Ill. M., K. & O. has a permit to operate from Tulsa over

State Highway No. 11 and U. S. Highway No. 60, through Pawhuska to Ponca City. It also has a permit to operate from Tulsa along U. S. Highway No. 64, through Pawnee, Bill's Corner, and Perry to Enid. It also operates a line from Tulsa over State Highway No. 33, and U. S. Highway No. 77, through Drumright, Perkins' Corner, and Guthrie to Oklahoma City. Between the two last-mentioned routes M., K. & O. operates a line from Oilton through Yale, entering Stillwater from the east. It will be noted that Stillwater is located between the Tulsa-Enid and Tulsa-Oklahoma City routes, about 12 miles south of Bill's Corner and about eight miles north of Perkins' Corner. M., K. & O. has terminal facilities at Stillwater with three employees, and operates buses to Bill's Corner and Perkins' Corner, where connections are made with their main lines. M., K. & O. has been the owner by purchase of the permits to operate to and through these two points for several years.

Turner has permits to operate from Seminole over State Highway No. 40 north to Drumright, and from Seminole through Shawnee, Chandler, and Perkins' Corner over State Highways Nos. 18, 33, and 40, to Stillwater. Turner does not maintain a terminal in Stillwater. Tickets for his bus lines are sold there by a hotel operator on a commission basis.

Prior to April, 1936, no bus service was operated from Stillwater through Bill's Corner and directly north to Ponca City. M., K. & O. was the owner of a permit to operate from Stillwater through Pawnee, Ralston, and Fairfax to Ponca City, but had ceased operating over this route for some time because the road south of Fairfax had become impassable. Thereafter they took their Ponca City passengers from Stillwater to Perry, where they were transferred to Southern Kansas Stage Lines and taken to Ponca City.

Recently a project was begun for improvement of county highway No. 10 from near Bill's Corner north to Ponca City. This route would reduce the distance from Stillwater to Ponca City 25 or 30 miles.

The testimony tended to show that M., K. & O. had any and all kinds of equipment necessary for operating over the proposed route. The testimony further showed Turner owned eight interurban busses, of which four were Chevrolet, ten or eleven passenger, two Chevrolet, 15 or 16 passenger, and one rebuilt Buick. He had purchased two new busses during April, 1936.

Both M., K. & O. and Turner expressed a desire to begin service immediately upon issuance of a permit.

Both parties contended, and the commission found, that public convenience and necessity required the issuance of the permit over the proposed route.

M., K. & O. contends that after finding that public convenience and necessity required additional facilities, the Corporation Commission is compelled to give the existing carrier, M., K. & O., an opportunity to furnish such additional service as may be required, and that its refusal to do so was arbitrary and unwarranted.

M., K. & O. cites from the case of Bartonville Bus Line v. Eagle Motor Coach Line, 326 Ill. 200, 157 N. E. 174, as follows:

"* * * Where additional or extended service is required in the interest of the public and a utility in the field makes known its willingness and ability to furnish the required service, the Commerce Commission is not justified in granting a certificate of convenience and necessity to a competing utility until the utility in the field has had an opportunity to demonstrate its ability to give the required service."

Upon reading the case we find the following additional expression:

"* * * And, where the evidence shows that an existing motor bus line has been rendering satisfactory service and is financially able to extend its lines so as to reach a more distant point on the same route, it has been held that it was unreasonable and arbitrary for the Commerce Commission to deny an application for such extension and grant a certificate of convenience and necessity to another line just organized to operate over the entire route, where it was conceded by all parties that there was not sufficient traffic over the route to justify the operation of two motorbus lines ' (Superior Motorbus Co. v. Community Motorbus Co., 320 Ill. 175, 150 N E. 668). The object and purpose of granting certificates of convenience and necessity for the operation of motorbus lines is to subserve the convenience and necessities of the traveling public. While priority in the field is an element to be considered, it will not of itself govern the granting of the certificate. Chicago Motorbus Co. v. Chicago Stage Co., 287 Ill. 320, 122 N. E. 477. The proper consideration in a matter of this kind is, 'Which applicant, under the facts and circumstances shown by the evidence, will best serve the public interests?' "

The facts of the Bartonville Case show that appellant had sought to extend its line to Canton, Ill., thereby giving service

from Peoria. It required a transfer of passengers at Orchard Mines. Appellee proposed to furnish through service without the necessity of a change. The court held that under those circumstances the Commerce Commission was fully warranted in granting a permit to the appellee. In this connection, see Oklahoma Railway Union Co. v. State, 146 Okla. 92, 293 P. 537.

In the instant case the evidence shows that Turner, if granted the permit, will be able to furnish through service to Ponca City for all traffic originating at Shawnee and the territory south and east of there. The appellant does not show, if such is true, that the traffic from Stillwater to Ponca City is more numerous and more important than the through traffic to Ponca City.

We have examined the authorities cited by M., K. & O. in addition to Bartonville Bus Line v. Eagle Motor Coach Line, supra, and find that they are distinguishable upon the facts. It cannot be said that M., K. & O., is the utility already in the field, over county highway No. 10, to Ponca City. As stated in the Bartonville Case, the question is, Which applicant, under the facts and circumstances shown by the evidence, will best serve the public interests?

That question is to be answered first by the Corporation Commission, and on appeal its order is prima facie just, reasonable, and correct, and where the evidence supports such order, this court will not disturb it. Oklahoma Union Ry. Co. et al. v. State et al., supra. See, also, Chicago, R. I. & P. Ry. Co. v. State et al., 126 Okla. 48, 52, 258 P. 874, 877, wherein this court said:

"To set aside an order of the Corporation Commission as being unjust, unreasonable, or arbitrary, it is not sufficient for this court to think the order unwise. It is within the province of the Corporation Commission to pass upon the wisdom of the proposed undertaking by a public utility."

We have examined the record, and there being some evidence reasonably tending to support the orders of the Corporation Commission, we are unable to say that the prima facie presumption of the reasonableness and justness of the orders has been overcome by appellant.

The order of the Corporation Commission is affirmed.

PHELPS, CORN, GIBSON, and HURST, JJ., concur. OSBORN, C. J., BAYLESS, V. C. J., and WELCH and DAVISON, JJ., absent.