22 So.2d 721

## ALABAMA PUBLIC SERVICE COMMISSION et al. v. CROW.

### 4 Div. 365.

Supreme Court of Alabama.

May 10, 1945.

Rehearing Denied July 26, 1945.

---

[1] 246 Ala. 40.

Wm. N. McQueen, Acting Atty. Gen., and Forman Smith, Asst. Atty. Gen., for appellant Alabama Public Service Commission.

Thos. B. Hill, Jr. and Wm. Inge Hill, both of Montgomery, for Capital Motor Lines.

T. E. Buntin, of Dothan, and Robt. B. Albritton, of Andalusia, for Alaga Coach Line.

Ewell C. Orme, of Troy, for appellee.

122

GARDNER, Chief Justice.

From an order of the Alabama Public Service Commission denying to J. R. Crow, doing business as the Florida-Alabama Motor Lines, a certificate of Public Convenience and Necessity for operation as a common carrier of passengers between Andalusia and Opp, Alabama, a distance of 16 miles, an appeal was prosecuted to the Circuit Court of Pike County, the place of residence of the carrier and his principal place of business. Title 48, Sec. 301(27), Code 1940, Cumulative Pocket Part. The appeal was there considered on the certified transcript of the proceedings before the Commission, and was governed by Sections 82 and 83, Title 48, Code 1940.

Upon consideration of the cause upon appeal the Circuit Court by decree rendered, set aside the order of the Commission and directed the issuance by the Commission forthwith of the certificate as sought by the applicant. From the decree the Commission has prosecuted an appeal to this Court. Section 82, supra, provides for the setting aside of the order of the Commission (1) if it be determined there was error of law; (2) or that the order was procured by fraud; (3) or was based upon a finding of fact contrary to the substantial weight of the evidence. There was no pretense that the order of the Commission should be set aside upon grounds 1 and 2 above indicated. The decree rendered was rested upon a disagreement of the learned trial Judge with the Commission as to the finding of fact.

The application in this case was presented in July, 1944. In the order entered on October 11, 1944, denying the application the Commission made note of the fact that in June, 1943, the applicant had sought authority to operate as a common carrier for passengers over the same route and between the same points, i. e., Andalusia and Opp, and that after due consideration his application was denied in September, 1943. The order also mentions the further fact that no rehearing was sought by the applicant, nor was any appeal prosecuted by him from the order denying his application. The Commission further stated that nothing appeared showing any change in conditions affecting travel between these points. The conclusion was reached that the evidence did not sufficiently show the existence of any unsatisfactory travel conditions that could not be remedied by the applicant by making a change in the

schedule, or by the addition of other schedules. These observations by the Commission were not made with any idea in mind that the matter had become foreclosed on the doctrine of res adjudicata. 42 Am. J. 519. The Commission evidently, however, considered it proper to state the fact that just a year previous application had been made and denied as to this same route. There appears to be only one difference in the application, and that is, that in the present application the applicant states that he will operate his buses with closed doors between Andalusia and Opp, and eliminate local traffic. In some instances a Certificate of Convenience and Necessity has been granted with restrictions of this character, as illustrated in the case of Bartonville Bus Line v. Eagle Motor Coach Line, 326 Ill. 200, 157 N.E. 175. The Commission, however, evidently did not consider this restriction as presenting a matter of any great difference in this particular case. Perhaps also the Commission considered the matter of supervision as to such restriction rather difficult.

Upon the hearing much evidence was offered both by the applicant and for the protestants, known as the Alaga Lines, and the Capital Lines, two protesting lines which operate over this route between Andalusia and Opp. It appears that the Alaga Lines operated four schedules per day in each direction and the Capital Lines three schedules in each direction per day, making a total of seven daily schedules in each direction over this route of 16 miles between Andalusia and Opp. It appears that the applicant operates a bus line from Phenix City, Alabama, to Opp, and embracing several intermediate points. He also operates a line from Elba to Dothan, by way of New Brocton and Enterprise; and from the Florida line to Andalusia, Alabama. He insists that the granting of his application will enable him to give a through passenger service joining points below Andalusia with Opp and points northeast of Opp with Andalusia.

Applicant offered before the Commission several witnesses who use his line, and who testified to the effect that such through service would meet the public convenience, saving the passengers the trouble of changing from applicant's line in making connection with the two competing lines at these points. The witness Taylor also testified to the convenience which would result to him in shipment of automobile parts from Andalusia south, as pursuant to the present arrangement he is required to carry them the 16 miles to Opp in order to make a direct shipment and save time. Applicant being asked as to whether or not he would accept an express shipment exchanged from either of the other lines at Opp stated that he would not, and such was not the custom. On the other hand protestants offered numerous witnesses who traveled in this territory, and who testified they had had no trouble concerning the schedule into Opp, or Andalusia, or from, one of the points to the other; that the buses were not crowded, and that they were always able to obtain a seat. Counsel for applicant appears to be under the impression that some of the testimony offered by protestants was objectionable as hearsay, but we do not consider it subject to such objection. Illustrative is the testimony of A. H. Johnson of Dothan, Alabama, who is Secretary of the Chamber of Commerce, and also Secretary of the Wiregrass Commerce Council, whose duties require him to travel much on the bus in all of this territory. Naturally in his line of business he has many inquiries, and is perhaps himself alert to discover any objectionable features that might affect the public. He stated that he had never heard any complaints as to travel conditions so far as the bus schedules were concerned. Of like character was the testimony of Kirkland, the taxi driver, of Opp. In other words the kind of proof to which counsel objects as hearsay was of a negative character, somewhat similar to that concerning the good character of a citizen in a certain community. But there were other witnesses who traveled these lines and testified positively that they had had no trouble in regard to the schedule, or the matter of comfort in their travel.

The record is rather voluminous and the testimony has been studied with care. We may add also that both the applicant and the protestants were represented by counsel, and the record discloses that the hearing was had in a very careful and orderly manner by the Commission, and with evident due sense of their responsibility in the matter.

 Under the express language of Section 82, Code 1940, supra, the order here presented for review on appeal is to be taken as prima facie just and reasonable. The Legislature in so providing quite

124

clearly had in mind that a grant or franchise of the nature here involved is quasi legislative in character, as well as quasi judicial; and that the order issued by the Commission is based upon evidence heard before it as a special tribunal instituted to deal particularly with problems of this nature. And indeed this prima facie rule of presumption in support of the finding of the Commission is recognized by the authorities generally. 51 C.J. 60. In North Alabama Motor Express, Inc., v. Rookis, 244 Ala. 137, 12 So.2d 183, 185, this Court made reference to that feature of the Statute and the character of work involved, and the matter of review by this Court of the finding of fact by the Commission. As said in that case, and applicable here, the present and future need in the matter of travel · is the major inquiry. Applicant seeks not only a Certificate of Public Convenience but one of Convenience and Necessity. True enough, as argued by counsel for the applicant, the word "necessity" is not used in the Statute in the sense of being essential or absolutely indispensable but merely that the Certificate is reasonably necessary for the public good. 42 C.J. 687. Or, as quoted from the Statute in the Rookis case, supra, the certificate will be issued if it be found after a proper hearing that the proposed service "will be required by the present or future public convenience and necessity." And as observed in the Rookis case, supra, this matter of present and future public need "calls for conclusions of fact upon evidence heard by a special tribunal set up as a permanent body to deal with the problems involved. Capable, understanding men, free of all interest save the performance of public duty, weighing evidence in the light of experience, is the set-up contemplated by law. Courts should not and do not overturn their findings save upon a clear conviction that their orders are wrong and unjust." It is clear enough also that the Courts must be careful in reviewing the conclusions of fact of an important administrative body, to guard against a substitution of the Court's own judgment of findings of fact for that of the administrative authority. 42 Am.J. 645.

■ In consideration of this question of public need the Commission must of course take into consideration the fact that the territory is served by other carriers (42 C.J. 687), and the adequacy of such service to meet the public need. And indeed such is the express language of our Statute Title 48, Sec. 301(9), Cumulative Pocket Part, Code 1940, wherein the Commission is directed to ascertain among other things "whether existing transportation service of all kinds is adequate to meet the reasonable public needs." After a full hearing and a consideration of conflicting proof the Commission reached the conclusion that the territory here involved was sufficiently served to meet all public needs, and that if any inconvenience resulted to any of the traveling public it could be corrected by a change of schedule or otherwise.

We have carefully examined the cases cited by counsel for the applicant, among them: Seaboard Air Line R. Co. v. Wells, 100 Fla. 1027, 130 So. 587; Abbott v. Public Utilities Commission, 48 R.I. 196, 136 A. 490; Bartonville Bus Line v. Eagle Motor Coach Line, 326 Ill. 200, 157 N.E. 175; North Bend Stage Line, Inc., v. Denney, 153 Wash. 439, 279 P. 752; Penn-Ohio Coach Lines Company v. Public Utilities Commission of Ohio, 140 Ohio St. 263, 43 N.E.2d 226. In the majority of the cases cited it is to be noted that the Courts were upholding the order of the Commission, and not overturning it. In Seaboard Air Line v. Wells, supra, the Florida Court was of the opinion that the Commission had evidently acted arbitrarily in disregarding the fact as to sufficient service in the territory, and the order was set aside. In Bartonville Bus Line v. Eagle Motor Coach Line, supra, upon which counsel for applicant lays some stress, the order of the Commission was in substance and effect approved, though for a formal defect in the order for the Certificate a reversal was deemed necessary. But the Court was careful to state that it was "solely by reason of this formal defect in the order" [326 Ill. 200, 157 N.E. 177] that the reversal was entered. That case is authority for the character of order here sought by the applicant, that is, with restrictions as to local traffic, and to operate between Andalusia and Opp with closed doors. Doubtless the Commission considered the difficulties inherent in all travel in these trying times of war, and that the Commission just a year previous had given due thought to all the matters pressed upon them in the instant case. Though the introduction of this matter of restrictions as to local traffic may be entitled to some weight, yet after all the Commission would have been justified in considering the present proceeding as in the

nature of a rehearing of the former. But we forego further discussion.

After a most careful review of this record we find ourselves unable to say that we have a clear conviction that the order is wrong and unjust. It was amply supported by legal evidence of substantial weight and probative force. We conclude with the closing sentence of this Court in the Rookis case, supra, as follows: "On full consideration we conclude it presented a case peculiarly addressed to the Commission, whose finding should not be overturned by setting up any opposing judgment or conclusion of our own."

It results therefore that the decree of the trial Court was in our opinion laid in error and should be here reversed, and the order of the Commission reinstated. It is so Ordered.

Reversed and rendered.

BROWN, LIVINGSTON and SIMPSON, JJ., concur.